**SO ORDERED.**

**SIGNED this 21st day of January, 2014.**



Dale L. Somers
United States Bankruptcy Judge

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

BETTY MAYHEW SKUBITZ,              CASE NO. 12-11544-7
                                                      CHAPTER 7
               DEBTOR.

**OPINION AND JUDGMENT GRANTING DEBTOR'S MOTION
FOR SUMMARY JUDGMENT**

This contested matter comes before the Court on the Debtor's motion for summary judgment on the question whether any part of her interest in a trust established by her husband's last will and testament is subject to the claims of her creditors, represented by the Chapter 7 Trustee. The Debtor appears by counsel Boyd W. Howard. J. Michael Morris appears as counsel for himself as the Chapter 7 Trustee in this case. The Court has reviewed the relevant materials and is now ready to rule.

The Trustee concedes the trust contains a provision that would ordinarily make it a spendthrift trust and therefore not property of the Debtor's bankruptcy estate. However,

he contends the Debtor's power as the trustee of the trust to make distributions to herself is a "power of withdrawal" under the Kansas Uniform Trust Code, which makes her interest in the trust subject to the claims of her creditors to the extent of the power. After considering the relevant materials and the parties' arguments, the Court concludes the Trustee is wrong for two reasons: (1) he has overlooked a provision in the Kansas UTC that would prevent the Debtor's creditors from attaching her interest in the trust even if the trust contained no spendthrift provision; and (2) the Debtor's power to distribute trust property to herself is not a power of withdrawal under the Kansas UTC. As explained below, the Court will therefore grant the Debtor's motion for summary judgment.

**Facts**

The Debtor's husband signed his last will and testament in 1994, and it was filed in Sedgwick County in February 2003. The will identified the Debtor as his wife and said he had three children, who were also identified.[1] The will made specific provisions for the disposition of certain assets, and gave the rest of the husband's property to the Debtor as the trustee of two trusts. Because the Debtor survived her husband, the first trust ("Trust A") was established with so much of his residuary estate as was needed to take full advantage of the federal estate tax unified credit and state death tax credit available to the estate. The other trust ("Trust B") was terminated in 2005.

Two paragraphs of the will directed how Trust A was to be held and managed:

---

[1]The Debtor's brief in support of summary judgment indicates these are also her children.

> 6.01 During the lifetime of my wife the Trustee shall pay to my said wife as much of the net income and principal as the Trustee, in the Trustee's absolute discretion, determines to be required to provide adequately for her reasonable support, maintenance and health, taking into consideration the other sources of funds available to my said wife from all sources known to the Trustee. The judgment of the Trustee as to the propriety and amount of such discretionary distributions shall be binding upon all persons.
>
> 6.02 Upon the death of my wife, . . . the Trustee shall divide the property in Trust A into a sufficient number of equal shares to create one separate Trust for each child of mine who is then living and one Trust for each child of mine who is then deceased, but who has issue then living.[2]

Paragraph 8.03 of the will provided: "Discretionary powers are exercisable in the discretion of the Trustee and no beneficiary shall have any right or power to enforce or object to the reasonable exercise of such powers."[3]

The will also contained a provision called "Prohibition Against Anticipatory Assignment"[4] that the Trustee concedes would ordinarily make Trust A a spendthrift trust so that the Debtor's interest in it would be excluded from her bankruptcy estate by § 541(c)(2) of the Bankruptcy Code. However, he contends the Debtor's power as the trustee of Trust A to make distributions to herself as a beneficiary of the trust constitutes a "power of withdrawal" under the Kansas UTC that, despite the spendthrift provision, authorizes her creditors to reach trust property to the extent she could distribute it to herself in the exercise of that power. The Trustee claims that the maximum amount the

---

[2]Dkt. no. 73-2 at 5-6.

[3]*Id*. at 11.

[4]*Id*. at 16.

3

Debtor could distribute to herself under that power belongs to her bankruptcy estate, and that the Court will have to determine what that amount is. The Debtor has moved for summary judgment, asking the Court to reject the Trustee's theory.

**Discussion**

**1. Summary judgment rules.**

Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[5] The substantive law identifies which facts are material.[6] A dispute over a material fact is genuine when the evidence is such that a reasonable factfinder could resolve the dispute in favor of the party opposing the motion.[7] In adjudicating disputes, bankruptcy courts usually both determine the law and find the facts. In deciding a summary judgment motion, though, the Court is limited to its role of deciding legal questions, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party about a material fact is sufficient to require a trial[8] at which the Court would act in its factfinding role. Summary judgment is inappropriate if an inference can be drawn from the materials properly submitted either to support or oppose the motion that would allow

---

[5]Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]*Id*.

[8]*Id*. at 249-50.

4

the non-moving party to prevail at trial.[9]

**2. The Trustee's theory under the Kansas Uniform Trust Code.**

As indicated, the Trustee concedes the anticipatory assignment provision in Trust A qualifies as a spendthrift provision under K.S.A. 58a-502, part of the Kansas version of the Uniform Trust Code,[10] which authorizes trusts to include such provisions and makes them enforceable against the creditors of beneficiaries of the trust. However, he points to another part of the UTC, § 505, which authorizes creditors of either the settlor of a trust or the holder of a power of withdrawal to reach trust property despite a spendthrift provision in the trust. As relevant here, K.S.A. 58a-505 provides:

> (a) [W]hether or not the terms of a trust contain a spendthrift provision, the following rules apply:
> (1) During the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors.
> (2) With respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit. . . .
> . . . .
> (b) For purposes of this section:
> (1) During the period the power may be exercised, the holder of a power of withdrawal is treated in the same manner as the settlor of a revocable trust to the extent of the property

---

[9]*See id*. at 248.

[10]The Kansas version of the UTC, modified in various ways from the version promulgated by the National Conference of Commissioners on Uniform State Laws in 2000, became effective on January 1, 2003. *See* 2002 Kan. Sess. L. ch. 133, § 94. The Kansas Judicial Council produced a version of the UTC, dated Oct. 9, 2000, with proposed Kansas modifications, and its proposal, together with Kansas and UTC Comments, is available online at http://www.kansasjudicialcouncil.org/uniformtrust.shtml. The version the legislature adopted differed in various ways from the Judicial Council's proposed version. For example, §§ 503 and 504 were omitted, but part of UTC § 504(b) became K.S.A. 58a-502(d) in the version the legislature passed.

5

subject to the power.[11]

Contending the Debtor has such a power of withdrawal, the Trustee claims a trial will be necessary at which the Court will have to determine the maximum amount the Debtor could distribute to herself under Trust A's standard of what is "required to provide adequately for her reasonable support, maintenance and health, taking into consideration the other sources of funds available to [her] from all sources known to [her]."

The Trustee's theory fails for two reasons. First, he has overlooked a provision in the Kansas UTC that prevents her creditors from compelling her to make any distributions from Trust A. Second, the Debtor's power as the trustee of the trust to make discretionary distributions to herself as a beneficiary is not a "power of withdrawal" under the Kansas UTC.

## 3. The Trustee's theory would fail even if Trust A did not include any spendthrift provision.

In 2003, after the Kansas version of the UTC took effect[12] and when the will that created Trust A was filed in Sedgwick County, § 502(d) of the Kansas UTC provided: "Whether or not a trust contains a spendthrift provision, a creditor of a beneficiary may not compel a distribution that is subject to the trustee's discretion."[13] In 2004, this provision was amended to its present form by adding at the end of it: "even if: (1) The

---

[11]K.S.A. 58a-505 was amended in 2004, *see* 2004 Kan. Sess. L. ch. 158, § 8, but the portions quoted here were not changed.

[12]*See* footnote 11 above.

[13]*See* 2002 Kan. Sess. L., ch. 133,§ 41.

6

discretion is expressed in the form of a standard for distribution; or (2) the trustee has abused the discretion."[14] Under either version of the statute, the Debtor's creditors cannot compel her to exercise her discretionary power to make a distribution to herself or on her behalf.

Even though the Kansas UTC did not take effect until January 1, 2003, and the Debtor's husband signed his will in 1994, the UTC can properly be applied to it. K.S.A. 58a-1106(a) provides that the Kansas UTC applies to all trusts created before, on, or after the effective date of the UTC and to all judicial proceedings concerning trusts commenced on or after its effective date, and that any rule of construction or presumption the UTC provides applies to trust instruments executed before the UTC's effective date "unless there is a clear indication of a contrary intent in the terms of the trust." In 2004, in *In re Estate of Somers*, the Kansas Supreme Court relied on this provision to conclude the UTC applied to a testamentary trust resulting from a death in 1956.[15] Since the UTC is properly applied to trusts created before the UTC was enacted, any amendment should likewise apply to trusts created before the amendment's enactment. Thus, the current version of K.S.A. 58a-502(d) is appropriately applied in this case, and bars the Trustee's claim. Applying this statute to bar creditors from compelling distributions from the trust is not contrary to anything the Court sees in Trust A, but instead is consistent with the intent shown by the trust's spendthrift provision.

---

[14]2004 Kan. Sess. L., ch. 158, § 7. *See* K.S.A. 58a-502(d).

[15]277 Kan. 761, 765 (2004).

7

Trust A clearly gives the Debtor discretion to determine amounts to distribute to herself, and establishes a standard for her to apply in exercising that discretion. Despite Trust A's effort to make the Debtor's distribution discretion "absolute," K.S.A. 58a-814 somewhat limits the extent of the discretion by requiring her to exercise that power "in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." Even with that limit, the power remains subject to the Debtor's discretion. Consequently, K.S.A. 58a-502(d) clearly bars the Trustee's effort to have this Court compel the Debtor to make distributions from Trust A for the benefit of her bankruptcy estate.

**4. The Debtor's discretionary power as the trustee of Trust A to make distributions to herself as a beneficiary of the trust is not a "power of withdrawal."**

The Trustee's argument that the Debtor's authority as the trustee of Trust A to distribute net income and principal to herself as a beneficiary constituted a power of withdrawal is not persuasive. A review of the definition of "power of withdrawal" in the Kansas UTC has led the Court to authorities that demonstrate the argument is wrong. In 2003, when the Debtor's husband's will was filed, K.S.A. 58a-103(10) defined "power of withdrawal" as used in the UTC to mean "a presently exercisable general power of appointment other than a power exercisable only upon consent of the trustee or a person holding an adverse interest."[16] Although the provision was later amended (as discussed

---

[16] K.S.A. 58a-103(10) (Furse 2005).

below), the definition remains limited to a "power of appointment."[17] This led the Court to consider what constitutes a "power of appointment."

"When there is no law directly on point, Kansas courts turn to the Restatement of Trusts."[18] General Comment *a* to § 50 of the Restatement (Third) of Trusts explains why the Debtor's authority as the trustee of Trust A is not a power of appointment:

> A trustee's discretionary power with respect to trust benefits is to be distinguished from a power of appointment. The latter is not subject to fiduciary obligations and may be exercised arbitrarily within the scope of the power. . . . (Tax law generally does not categorize powers in this manner, and even traditional property-law distinctions between fiduciary powers and powers of appointment may be difficult to draw; this is especially so because a true power of appointment can be conferred upon one who is also a trustee, although a power that runs with the office of trustee is strongly presumed to be a fiduciary power.)[19]

Under Trust A, the power to make distributions to the beneficiaries was conferred on the trustee of the trust, not on the Debtor personally. The Debtor was named as the initial trustee but she could have declined, resigned, or been removed, and a successor trustee would have been named or appointed, and would have succeeded to the power to make distributions. In other words, the power ran with the office of trustee, and as indicated by the Restatement, this means the Debtor's power to make distributions is a fiduciary power, not a power of appointment. Other provisions of the Kansas UTC spell out some

---

[17]*See* K.S.A. 2012 Supp. 58a-103(10).

[18]*In re Estate of Somers*, 277 Kan. at 767 (citing *In re Estate of Sanders*, 261 Kan. 176 183 (1996).

[19]Restatement (Third) of Trusts, § 50, General Comment *a*. (2003), *available on Westlaw at* REST 3d TRUSTS § 50 (database updated June 2013).

9

of the Debtor's relevant fiduciary obligations: (1) K.S.A. 58a-801 requires her to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this code"; (2) K.S.A. 58a-802(a) requires her to "administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries"; and (3) because the Debtor's three children (and their issue) are secondary beneficiaries of Trust A, K.S.A. 58a-803 requires her to "act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." Nothing in Trust A suggests the Debtor was granted a power of appointment rather than a trustee's discretionary power over trust benefits. All this means the Debtor's discretionary power as the trustee of Trust A to distribute trust property to herself as a beneficiary is not a "power of withdrawal" under the Kansas UTC.

Furthermore, K.S.A. 2012 Supp. 58a-103(10) was amended in 2006 to define "power of withdrawal" to mean "a presently exercisable general power of appointment other than a power: (A) Exercisable by a trustee and limited by an ascertainable standard relating to an individuals [sic] health, education, support or maintenance within the meaning of section 2041(b)(1)(A) or 2514(c)(1) of the Internal Revenue Code of 1986, as in effect on July 1, 2006; or (B) exercisable by another person only upon consent of the trustee or a person holding an adverse interest."[20] Under this definition, so long as the

---

[20]*See* 2006 Kan. Sess. Laws, ch. 23, § 1. As explained earlier in discussing K.S.A. 58a-502(d), K.S.A. 58a-1106(a) makes it appropriate to apply this amendment in this case.

Case 13-12847    Doc# 14    Filed 01/21/14    Page 10 of 15

Debtor's power as the trustee to make distributions to herself as a beneficiary was limited by an "ascertainable standard" as defined under the cited portions of the IRC, that power did not constitute a "power of withdrawal" under the Kansas UTC.

Section 2041(a) of the IRC concerns the federal estate tax and brings into a decedent's gross estate any property with respect to which the decedent had a general power of appointment at the time of his or her death; for that purpose, § 2041(b)(1) provides:

> The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that —
> (A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.[21]

Section 2514 of the IRC concerns the federal gift tax, and specifies that the exercise or release of a general power of appointment is deemed to be a transfer of property by the possessor of the power; for that purpose, § 2514(c) defines "general power of appointment" in terms similar to § 2041(b)(1):

> For purposes of this section, the term 'general power of appointment' means a power which is exercisable in favor of the individual possessing the power . . ., his estate, his creditors, or the creditors of his estate; except that —
> (1) A power to consume, invade, or appropriate property for the benefit of the possessor which is limited by an ascertainable standard relating to the health, education,

---

[21] 26 U.S.C. § 2041(b)(1).

Case 13-12847    Doc# 14    Filed 01/21/14    Page 11 of 15

> support, or maintenance of the possessor shall not be deemed
> a general power of appointment.[22]

So both provisions say a power limited by an ascertainable standard relating to the power-holder's health, education, support, or maintenance is not a general power of appointment. IRS regulations interpreting these provisions specify what qualifies as "an ascertainable standard." Regulations construing both statutes provide that: "A power is limited by [an ascertainable standard] if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them)."[23] Under both of these provisions, the Debtor's power to distribute Trust A property to herself is subject to an ascertainable standard and is therefore not a general power of appointment, and consequently, is not a "power of withdrawal" under the Kansas UTC.

The Court notes that § 60 of the Restatement (Third) of Trusts suggests that the common law allows creditors of a beneficiary who is also a trustee of a trust to reach that person's beneficial interest in the trust.[24] This part of the Restatement was the inspiration for several amendments to the UTC that were proposed in 2004 to prevent this part of the Restatement from applying in certain situations; one relevant amendment has been

---

[22] 26 U.S.C. § 2514(c)(1).

[23] 26 C.F.R. § 20.2041-1(c)(2) (current through Sept. 12, 2013), *available on Westlaw at* 26 C.F.R. § 20.2041–1; 26 C.F.R. § 25.2514-1(c)(2) (current through Sept. 12, 2013), *available on Westlaw at* 26 C.F.R. § 25.2514–1(c)(2).

[24] Restatement (Third) of Trusts, § 60, comment *g* (2003), *available on Westlaw at* REST 3d TRUSTS § 60 (database updated June 2013).

Case 13-12847    Doc# 14    Filed 01/21/14    Page 12 of 15

adopted in Kansas.[25] The UTC Comment to the 2004 Amendment of §§ 504(e) and 103(11) noted the approval of § 60, comment *g* of the Restatment (Third) of Trusts, and indicated the Restatement's rule might apply as supplemental common law in states that had adopted the UTC.[26] Then the Comment said: "The drafting committee has concluded that adoption of the Restatement rule would unduly disrupt standard estate planning and should be limited."[27] To further this conclusion, the committee recommended adding a definition of "ascertainable standard" to § 103 that ties it to the meaning of that phrase under §§ 2041(b)(1)(A) and 2514(c)(1) of the Internal Revenue Code and amending the definition of "power of withdrawal" to clarify that a power exercisable by the trustee that is limited by an "ascertainable standard" is not such a power.[28] The Comment explains:

> The purpose of this amendment is to preclude a claim that the power of a trustee-beneficiary to make discretionary distributions for the trustee-beneficiary's own benefit results in an enforceable claim of the trustee-beneficiary's creditors to reach the trustee-beneficiary's interest as provided in Section 505(b). . . [T]he amendment to "power of withdrawal" is being made because of concerns that Restatement (Third) of Trusts Section 60, comment g, otherwise might allow a beneficiary-trustee's creditors to reach the trustee's beneficial interest.
>
> Rather than adding a new definition of "ascertainable standard" and incorporating

---

[25]As explained earlier in discussing K.S.A. 58a-502(d), K.S.A. 58a-1106(a) makes it appropriate to apply the relevant Kansas amendment in this case.

[26]National Conference of Commissioners of Uniform State Laws, Uniform Trust Code (Last Revised or Amended in 2010), at 93, (original approved in 2000, but latest version dated Jan. 15, 2013), available online at www.uniformlaws.org/shared/docs/trust_code/utc_final_rev2010.pdf.

[27]*Id.*

[28]*Id.* at 93-94.

13

it into the definition of "power of withdrawal," the Kansas legislature simply put the "ascertainable standard" language and references to the Internal Revenue Code directly into the Kansas UTC's definition of "power of withdrawal."[29] Therefore, like the model Uniform Trust Code, the Kansas UTC has adopted the view that so long as a trustee-beneficiary's power to make discretionary distributions to himself or herself is limited by an ascertainable standard (as defined for purposes of § 2041(b)(1)(A) and 2514(c)(1) of the Internal Revenue Code), the trustee-beneficiary's creditors cannot reach the trustee's beneficial interest in the trust, rejecting the contrary result proposed by the Restatement (Third) of Trusts § 60, Comment *g*, in that situation.

**5. The Debtor's authority as the trustee of Trust A should not be subject to the Court's interference unless she misinterprets or abuses her discretion.**

Section 50 of the Restatement (Third) of Trusts provides another reason the Court is not willing to accept the Trustee's theory in this case. It states:

> (1) A discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is subject to judicial control only to prevent misinterpretation or abuse of the discretion by the trustee.[30]

The Trustee has not suggested the Court should interfere with the Debtor's determination of her benefits as a beneficiary of Trust A on the ground she has misinterpreted or abused her discretion,[31] but instead that the Court should determine in the first instance the

---

[29]K.S.A. 2012 Supp. 58a-103(a)(10); *see also* 2006 Kan. Sess. L. ch. 23, §1.

[30]*Id*. at § 50(1).

[31]Indeed, the Trustee's statement of additional facts in his response to the Debtor's summary judgment motion includes the assertion "As to Trust A, the debtor takes out only the dividend income

14

maximum amount the Debtor could distribute to herself for her support, maintenance, and health. The Restatement indicates this is not a proper reason for a court to interfere with a trustee's discretionary power to determine a trust beneficiary's benefits.

**Conclusion**

Because (1) the Trustee overlooked K.S.A. 58a-502(d), (2) his assertion that the Debtor has a "power of withdrawal" under Trust A is wrong, and (3) he has not identified anything else that might override K.S.A. 58a-502(d) or render the spendthrift provision of Trust A unenforceable, § 541(c)(2) of the Bankruptcy Code allows the spendthrift provision to operate and prevent the Debtor's beneficial interest in Trust A from becoming property of her bankruptcy estate. The Debtor's creditors could not reach that interest, and neither can the Trustee. The Debtor's motion for summary judgment will therefore be granted.

**Judgment**

For the reasons stated, the Debtor's motion for summary judgment is hereby granted, and the Trustee's effort to reach her beneficial interest in Trust A is rejected. Pursuant to Federal Rule of Bankruptcy Procedure 9021, this judgment will become effective when it is entered under Rule 5003.

# # #

---

each year." Dkt. no. 84 at 3. This indicates the Debtor has been restrained in exercising her discretion.